# City of Philadelphia's Appeal.

1. The Act of April 28th 1870, fixing the line of Chestnut street, provided that it should " not interfere with any buildings now erected on the south side of that street;" the front of a building was taken down and a new front erected on the line prescribed by the act; ornamental columns, pilasters, &c., to the front were extended fifteen inches beyond the line. *Held,* that these were not prohibited by the act.

2. According to the ordinary course of equity practice, when a case is heard on bill and answer, the allegations of fact in the answer are admitted.

3. In a bill for injunction, if the question is doubtful, it is decisive against the injunction; chancery will not decree an injunction except in a clear case of the invasion of a public or private right.

4. No usage, however long continued, will justify an encroachment upon a highway; but such encroachment, to be remedied by injunction, must be really an obstruction to the free use of the highway.

January 13th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeal from the Court of Common Pleas of *Philadelphia:* Of January Term 1873, No. 56½.

This was a bill filed January 23d 1872, by the City of Philadelphia, against the Presbyterian Board of Publication.

28 P. F. SMITH—3

[City of Philadelphia's Appeal.]

The bill, in substance, set out that the defendants were erecting a building on the south side of Chestnut street, below Broad street, in Philadelphia; had extended the foundation of the building fifteen inches beyond the line of the street, as fixed by the Act of April 8th 1870, and had constructed on the foundation a pediment, and were proceeding to erect piers and columns on it, which would encroach on the sidewalk fifteen inches. The prayer was that the defendants might be restrained from continuing the erection beyond the south line of Chestnut street, as fixed by the act.

A preliminary injunction was granted. Affidavits were filed, and after hearing the injunction, was dissolved; Paxson, J., delivering the following opinion:

" This was a motion to continue a special injunction. The bill charges that the defendants are now erecting a large granite building on the south side of Chestnut street, below Broad, and that the foundation-wall of said edifice has been extended fifteen inches beyond the line of said street, as the said line was regulated by Act of Assembly, approved the 28th day of April, A. D. 1870, and that the said defendants have constructed a pediment upon said foundation-wall so extended, and are about to erect piers and columns thereon, so that the line of said edifice, when completed, will encroach upon the sidewalk, and will extend fifteen inches to the northward of the line of said street, as regulated by the Act of Assembly aforesaid. The defendants have submitted the affidavits of John McArthur, Jr., architect of said building, and several others, from which it appears that the ashlar or true wall of said building conforms strictly to the line of said street, and that the only portions of said building which encroaches thereon, are the ornamental parts and architectural details of the front, such as columns, pilasters, window headings, door jambs and cornices, which project over said line from six to fifteen inches.

" D. Hudson Shedaker, surveyor for the district, in his affidavit says, he furnished defendants with the line of the street, and that the ashlar or true wall line of the front is being built on the line as furnished by him. That there are several ornamental portions— the front columns with thin bars—which project from the ashlar line on Chestnut street, a little over a foot. For the purpose of this motion, we must consider it as established that the ashlar or true wall of the front of said building is upon the line of the street, as regulated by Act of Assembly, and given to the defendants by the surveyor of the district, and that it is only the ornamental portions of the front which project over said line from six to fifteen inches. The question for our determination is, whether such projections constitute such a nuisance as requires the court to interfere by injunction. Of our jurisdiction we entertain no doubt. In the cause of The City against Friday and Crump, 6 Philada. R. 275, we held that 'any encroachment on the streets of the city of

[City of Philadelphia's Appeal.]

Philadelphia is a nuisance, which will be enjoined at the suit of the city.'

" Referring again to the affidavits submitted on the part of defendants, it is stated by the district surveyor that for many years it has been the universal custom and practice of builders to come out over the line with ornamental works, such as columns, porticoes, pilasters, cornices, balconies, window-dressings, door-jambs, throughout the city; this has especially been the case with our public and prominent buildings, and that, before the institution of this suit, no action has ever been taken against any person coming out or attempting to come out over the absolute fixed lines of a street with the ornamental work of his buildings, or architectural additions.    John McArthur, Jr., the architect referred to, says: 'I have been an architect in this city for upwards of thirty years, and during all that time I have been in the practice, in accordance with the universal usage and custom in this city, of putting in my designs, steps, porches, pilasters, balconies, cornices, pillars, and other ornamental features, projecting more or less from the street-line upon which I placed the ashlar or true wall-line of the building, and of having the building erected in accordance with such designs; and the present is the first instance in which I have known or heard of objection being made, and such, I have no hesitation in saying, has been the general custom and practice with architects and builders.'

" The affidavits on the part of the defendant specify a number of buildings, the ornamental portions of which project over the line of the streets from six inches to four feet. * * *

" The Act of 28th of April 1870, Pamph. L. 1291, referred to, provides, ' that the south line of Chestnut street, between the rivers Delaware and Schuylkill, shall be at the distance of five hundred and thirty-nine feet southward of the south side of Market street: Provided, That this act shall not interfere with any buildings now erected on the south side of Chestnut street.'

" This act is awkwardly worded, but the manifest effect of it is to widen Chestnut street, by taking off five feet from the property on the south side thereof, with a saving clause as to buildings now in existence.    As the edifice now in process of construction by the defendants is not strictly a new building, but the alteration of an old one, with an additional or new building in the rear, and a new front on Chestnut street, it may be questioned whether it does not come within the saving clause of the Act of Assembly above cited. The said building, before the alterations were commenced, stood upon the old line of Chestnut street, and the defendants have, in making said alterations, fallen back to the new line as to everything but the ornamental portions.

" But there are other considerations which weigh with us in the determination of this case.    In order to have an intelligent under-

[City of Philadelphia's Appeal.]

standing of it, we must glance at the legislation upon the subject. The forty-fifth section of the Act of the 18th of February 1769, 1 Smith's Laws 301, provides that 'whereas, by late extraordinary encroachments of the cellar-doors, steps and windows, bulks, and other encroachments of the said streets and other encumbrances, the said streets are greatly obstructed, and by a number of spouts or gutters set at the eaves of pent-houses and other places in the said streets, large collections of water are discharged in rainy seasons on persons passing near the same: Be it, therefore, further enacted, that if any person or persons shall hereafter make and set up, or shall cause to be made and set up in any street of fifty feet wide or upward, within the said city, any porch, cellar-door or step, which shall extend beyond the distance of four feet three inches into such street, or a proportionate distance into any narrower street, when the same shall be made or set up; and if any person shall hereafter make and set up, or cause to be made and set up, any bulk, jut-window or encumbrance whatsoever, whereby the passage of any street shall be obstructed, or shall so place, or cause to be placed, any spout or gutter, whereby the passage of any street shall be obstructed, or shall be so placed, or caused to be placed, any spout or gutter, whereby the passage of any street shall be incommoded, every person offending,' etc.

" The forty-eighth section of the same act provides: ' That nothing contained herein shall be deemed, taken or construed to prevent any person or persons, to set up or place any such sign, signboard, pole or other device or thing aforesaid, against the wall of their several dwellings, so that the same shall not project or extend into the said streets, lanes or alleys, more than six inches.'

" This was the first legislation on the subject, and was induced, as the preamble to the section first quoted clearly shows, by extraordinary encroachments of various kinds upon the streets of the city, at the same time clearly recognising some encroachment upon the line of the street for certain purposes, and defining the extent to which such encroachments might thereafter go.

" This was followed by the Act of the 15th of April 1828 (Pamph. L. 626), which repealed the forty-seventh section of the Act of 18th of February 1769, above cited, as to signs, and conferring on the Select and Common Councils of the city of Philadelphia, the power to regulate by ordinance, from time to time, and ' to establish such and so many rules and regulations as to them may seem expedient for the better regulation of porches, porticoes, benches, doorsteps, railings, bulks or jut-windows, areas, cellar-doors and cellar-windows, signs, sign-posts, boards, poles, frames, awnings, awning-posts, or other device or projection over, under, into or otherwise occupying the sidewalk, or other portion of any of the streets, lanes and alleys,' &c.

" The fourth section repeals so much of the said Act of 1769 as

is supplied. Then follows ordinance of councils of September 23d 1864 (Dig. Ord. 192), defining what shall be nuisances, the tenth, eleventh and twelfth sections of which referred to projections. By the said section it is declared to be a nuisance : First. To extend or project from any dwelling or building, except inns, any sign-boards, pole or other device, to denote or show the place of business, or the merchandise or things which the occupant thereof has to dispose of, into or over any of the footways of any street of this city, below the top of the first story, to a greater extent than four feet three inches on any of the other parts of each building. Second. To place or maintain any cellar-door, porch or steps, which shall extend more than four feet six inches into any footway of any street of fifty feet wide or upward, of a proportionate distance, into any footway in any street of less width than fifty feet. Third. To set up or maintain any fence beyond the building line ; or any railing, except around excavated areas now existing, so as to reduce the footways of streets, &c., * * * or to project any bulk window more than one foot into the footway beyond the building line ; or to put up after sunset and before sunrise, any awning below the level of the light in any public lamp.

" This is all the legislation upon this subject. The legislature having in terms conferred upon councils the power to regulate the whole matter of projections, that body, as we have seen, proceeds to act upon it, and has declared certain things public nuisances; but councils have not anywhere said that these ornamental projections added to the ashlar line of a building, are nuisances. This is, perhaps, of some importance when we bear in mind that at the time when the ordinance of 1864 was passed, and for years before, it was the custom of builders to project such ornamental work over the line of the street. This was done, too, without a word of objection on the part of the building inspectors, city surveyors, councils, or other city officials.

" While such a course of action on the part of builders does not make such a custom as would prevent councils from prohibiting it, nevertheless, the silence of councils in regard to it when the practice was well known, and the acquiescence in it by the city authorities for so long a time, would seem to furnish a solid reason why this court should not interfere by special injunction in a case where the building has already been commenced.

" The whole subject properly belongs to the city councils. It is competent for them so to legislate as to cover the whole ground, and leave the public in no doubt as to what the rights and duties of builders are in the premises. So far as they have acted, the necessity of some projection is recognised. Steps and porticoes are allowed to project four feet six inches.

" If the strict rule contended for here were adopted, it would result in the shaving off of every door, window-head and cornice,

[City of Philadelphia's Appeal.]

projecting over the line of the street.    For, if they do not inter-
fere with the foot passenger, they may perhaps limit the light and
air." * * *

The defendants then filed an answer, which set out that the erec-
tion, &c., complained of, was the alteration of buildings Nos.
1334 and 1336 in Chestnut street belonging to the defendants;
that the alterations were the erection of a granite front; the
east and west walls of the building were not taken down, except
so far as to throw the front of the building back to the line of the
street as fixed by the act; that the true wall of the new front of
the building stands on the line fixed by the act; that the ornamental
parts of the front at certain points project beyond this line; these
ornamental parts were six columns, designed to support other orna-
ments and decorations of the front of the building, and were not
necessary to the support and stability of the true front wall of the
building, but were purely ornamental and decorative, and would
extend from six to fifteen inches beyond the line of the building.

The foregoing abstracts from the pleadings, in connection with
the opinion of Judge Paxson, will sufficiently exhibit the case.

The cause was heard on bill and answer, and by consent of coun-
sel, the bill was dismissed pro formâ without prejudice..

The plaintiff appealed to the Supreme Court and assigned for
error the decree dismissing the bill.

*C. H. T. Collis* (City Solicitor), for plaintiff.

*S. C. Perkins* (with whom was *G. Junkin*), for appellees.

Mr. Justice SHARSWOOD delivered the opinion of the court, Janu-
ary 21st 1875.

The affirmance of the decree of the court below might be rested
upon the opinion of our brother Paxson, on the motion heard before
him to dissolve the injunction.    But that our judgment may not
be misinterpreted and extended beyond what is meant to be decided,
it may be necessary to add what are the special grounds of this
determination.

The cause was set down to be heard on bill and answer.    Ac-
cording to the ordinary course of equity practice, that is an admis-
sion of the truth of the allegations of fact contained in the answer.
It is distinctly alleged by the defendants that the acts complained
of in the bill were mere alterations of an old building, and as it
is provided by the act entitled " An Act defining the line of Chest-
nut street in the City of Philadelphia," approved April 28th 1870,
Pamph. L. 1291, by which in effect Chestnut street was widened
five feet on the south side, that the act " shall not interfere with
any buildings now erected on the south side of Chestnut street,"
it is contended that the defendants are saved from the consequences.

The learned judge below considers that as a doubtful question.  Certainly had the defendants simply renovated their old front on the old foundation it would not be easy to see why they might not have done so.   It was not the intention of the legislature to enact that the owner of an old building could not run up a new front on the old foundation without falling back to the new line.   This might and in many cases would entirely change all the internal arrangements of the house, especially if it was a dwelling.   If this was so, and the improvement in question was as is alleged an alteration of a building, which at the date of the Act of Assembly was then erected on the south side of Chestnut street, surely the defendants might fall back less than five feet.   To say that this is a doubtful question is decisive against the injunction.   Chancery never puts forth this strong arm unless in a clear case of the invasion of a private or public right.

We concede that no usage, however long-continued, will justify an encroachment great or small upon a public highway.   But in the exercise of that sound discretion with which a chancellor is invested, he may well consider and give effect to such an usage as rightfully persuasive to arrest his interposition by the writ of injunction.   Otherwise he might be made the instrument of very gross injustice.   Courts of equity are not instituted in general to enforce abstract legal rights.   There must be substantial, irreparable injury attempted.   The encroachment on a public highway to be remedied by this process must be really an obstruction to the free use of it.   Now it is very clear that, admitting that the defendants were bound to fall back with their new front, to the new line—the columns, cornices and ornaments they have added to their new front are no real obstruction of the highway, though it may be that technically they are so.   It is certain that under the ordinance of the city of Philadelphia of September 3d 1864, they might have placed cellar-doors, porches or steps extending into the footway four feet six inches and forming thus a much more serious obstruction of the highway than any that has been attempted.   Every case of this kind must depend on its peculiar circumstances and will form no precedent for any other case varying from it in those circumstances or the character and extent of the encroachment.

Decree affirmed and appeal dismissed at the costs of the appellant.