# Commonwealth of Pennsylvania, Appellant, *v.* George P. Yost.

*Water course—Sewers—Boroughs—Health ordinance.*

There cannot be a public or common sewer that has not been constructed and maintained by a municipality and that is not subject to municipal control.

A stream or water course does not lose any of its characteristics because houses are built upon its banks or because they increase in numbers so as to become a borough.

A health ordinance directing all privies on properties within a certain distance of a common sewer to be connected therewith cannot be construed into an adoption or maintenance of a fresh water stream as a sewer for the borough; nor is such adoption or maintenance to be inferred from the fact that surface water from the street had been on occasion directed by the burgess into the stream, or from the fact that the commissioner had caused the channel of the stream to be cleaned out upon one occasion. Trifling emergency work done by the borough to relieve its streets from overflow is not evidence of municipal duty to maintain a running stream—as a public sewer.

*Sewers—Water and water course—A municipality may not by ordinance convert a natural running stream into a common sewer—Nuisance.*

A municipality may not, by adopting a natural stream and water course as a common sewer, thereby legalize, permit of and direct the connection therewith of privies so that human dejecta and excrementitious matter will be deposited in the bed of such stream which, by the natural flow of the water in the channel, will be carried down that stream or into and by other streams and waters used for drinking purposes and which thereby are polluted with germs of disease.

A nuisance per se cannot be authorized by the process of thus adopting a natural water course by a municipality as a common sewer when the necessary result of such action is likely to induce death and disease to lower riparian owners and others using the waters so polluted.

*Pollution of stream—Nuisance—Board of health.*

To place a privy so that human dejecta and excrementitions with the accompanying poisonous and disease-producing germs may drain into a natural stream of fresh water in close proximity to the source of the water supply of a city is just such disregard of law and duty as the legislature and the board of health have endeavored to prevent. To maintain such a privy is to maintain a public nuisance and subjects the owner to indictment under the acts of 1860 and 1885.

*Board of health—Power of secretary—Evidence.*

On indictment for maintaining a nuisance in the shape of a privy draining into the source of a water supply, it was error to reject evidence offered

by the commonwealth to prove that a complaint was made by the state board of health; that action was taken by the board through its secretary and the defendant notified and required to remove and abate within ten days. While the legislature may not delegate the power to make a law it can delegate the power to determine some fact or state of things upon which the law makes its own action depend. The act which created the state board of health designated the secretary as the executive officer and such officer, with his duties defined by the by-laws, is intrusted with the execution of the law; within the scope of his authority he is the board.

*Nuisance per se—Power of board of health to declare—Province of court and jury.*

A board of health or municipality has abundant powers to declare to be a nuisance and to abate whatever is per se a nuisance at common law and while such determination may not be final and conclusive the court should declare it if the uncontradicted evidence establishes a nuisance per se, if not, the case is for the jury.

*Opinion evidence as to nuisance.*

Whether a state of facts amounts to a nuisance is, in many cases, dependent on the opinion of witnesses and a reasonable and probable exactness based on experience and scientific investigation is the most that can be expected in such cases.

*Pollution of waters—Nuisance per se—Presumption cannot justify.*

No prescription or usage can justify the pollution of a stream by the discharge of sewage in such a manner as to be injurious to the public health. The use of a privy the percolations of which contaminate the sources of a water supply is a nuisance per se, not justifiable on the ground of necessity.

Argued March 20, 1899. Appeal, No. 37, March T., 1899, by plaintiff, from order of Q. S. York Co., Aug. Sess., 1898, No. 36, on verdict of not guilty. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by ORLADY, J.

Indictment for maintaining a nuisance. Before BITTEN-GER, P. J.

It appears from the record that the indictment in this case contains three counts, to wit: first for maintaining a nuisance under section 73 of the Crimes Act of March 31, 1860, P. L. 382, and second and third for refusing to obey an order of the state board of health to abate and remove a nuisance under the Act of June 3, 1885, P. L. 56. It appears from the uncontradicted evidence that the defendant erected and maintained a

privy on the bank of a natural stream of fresh water in the borough of Glen Rock, which is situated about twelve miles above the pumping station of a water company which supplied the city of York with water for drinking and domestic purposes; that the privy is so located that human dejecta and excrementitious matter are deposited in the bed of the stream, and by the natural flow of the water in the channel they are carried down the stream into Codorus creek; that pollution of drinking water by human fæces is likely to produce disease by those who use the water; that there had been nineteen cases of typhoid in Glen Rock prior to this prosecution, and shortly afterwards a number of persons in the city of York were affected with the same fever. On June 28, 1898, a notice from the secretary of the state board of health was served on Dr. Yost to remove the nuisance within ten days. He did not do so; information was made; and he was indicted for maintaining a nuisance and disobeying the order of the board under the act of 1885.

At the trial [the commonwealth offered in evidence in connection with testimony already in of Dr. Lee and Samuel Wallick, the appointment of Samuel Wallick as a deputy inspector; also the regulation of the board of health in regard to the abatement and removal of nuisances; a notice by the secretary of the board of health to abate and remove the alleged nuisance within ten days with proof of service thereof. This for the purpose of sustaining the issue on the part of the commonwealth as regards the second and third counts of the bill of indictment, and showing the action of the board of health by its executive officer, the order and noncompliance with the order by the defendant. The offer being objected to by defendant was rejected by the court.] [1]

Defendant offered testimony against objections of the commonwealth as follows: [An offer having been requested by plaintiff's counsel, defendant's counsel offers to prove that Dr. Yost's water-closet is located on Manchester sewer, in the borough of Glen Rock; that Manchester sewer is a natural stream, partly covered by the borough authorities; that it has been used by the borough, and the individuals living along it, as a common sewer, for a period of more than fifty years; that the defendant and his predecessors in title have used the stream as a common sewer, such as the defendant is now charged with doing, for a

period of more than twenty-one years. For the purpose of showing that if the south branch of the Codorus creek is polluted from the said Manchester sewer, that it was so polluted before the York Water Company began to use the water of the Codorus creek, either from the south branch or from the main creek below King's dam; and for the purpose of showing that the borough has acquired the right by prescription of polluting the south branch of the Codorus creek, if it has polluted it; and to show that the defendant has acquired the right of using the stream as a sewer, as he is now using it, by prescription. And also for the purpose of showing that if the waters of the south branch are polluted, it is not the property complained of by this defendant which causes the pollution, but that it is polluted by others.

Objected to (by Mr. Niles) as not proper legal evidence. It is objected to for any purpose on the part of the defendant. The defendant can acquire no right to commit a nuisance by prescription, nor by the permission of the municipal authorities, if there was such. The evidence is irrelevant, immaterial and misleading. And, further, the evidence proposed to be offered, that others are doing the same thing, is not evidence for the defendant, and is irrelevant.

Mr. Black: We propose to show that it is a common sewer, and that there is an ordinance which requires defendant to empty into it.

The Court: We will allow you to show that it is a common sewer, and seal an exception for the commonwealth.] [2]

[The court admitted testimony offered on the part of the defendant against objections of the commonwealth, for the purpose of showing that the residents of the borough of Glen Rock have used this stream as a public and a common sewer for more than fifty years. And for the purpose of showing that others than this defendant put their sewerage into this stream, which flows into the south branch of the Codorus creek. And for the purpose of sustaining the issue on the part of the defendant.

Objected to (by Mr. Niles) as not proper legal evidence for the defendant for the purpose offered, and not proper evidence for the defendant in this case, and as irrelevant, immaterial and misleading.

The Court: There can be no prescriptive right for a nuisance, and we reject the evidence as to that. But we allow you to prove that the borough adopted it as a sewer, and that it was used as a sewer.] [3]

[The court admitted in evidence an offer on the part of defendant against the objections of the commonwealth for the purpose of showing the rulings and regulations of the health board of the borough of Glen Rock as ratified and made law by the action of the borough council, the material part of the regulations and ordinance being as follows: "The sewerage from each building on every street provided with a common sewer shall be conducted into said sewer." This to be followed by evidence to show that that ordinance has been enforced by the borough of Glen Rock from the time it was enacted, the ruling of the court upon the offer being as follows: "We have examined this question during the adjournment of the court, and we think it is evidence. The general borough act gives power to boroughs to regulate matters of this kind. The act of assembly of 1893, ' To enable borough councils to establish boards of health,' provides for regulations of matters of this kind; and there is some evidence before the court that this stream of water, over which the nuisance is alleged to have been erected and maintained, was recognized by the borough as a public sewer. The evidence is not strong, but there is some evidence. Therefore we think the offer is admissible. We admit the offer, and seal an exception for the commonwealth."] [4]

[The court admitted in evidence testimony to prove by defendant, he being on the stand, that he had been the health officer of the borough of Glen Rock; that the health board understood and construed the regulations already offered in evidence to require all persons living upon the stream into which the defendant's sewerage is alleged to be emptied to empty their sewerage into said stream, and that the witness so understood the regulations; this for the purpose of showing absence of criminal intent on the part of the defendant in maintaining the property complained of, the ruling of the court thereupon being as follows: " We think it is evidence to show that the courts have gone very far to show what a defendant's intent was; and if he believed at the time of the maintenance

of this nuisance that this was a public sewer, we think they have a right to prove it."] [5]

The court charged the jury in part as follows :

[The defense interposed is that the small stream on which the defendant's water-closet is located is a public sewer, and the defendant offered some testimony here from citizens of Glen Rock to show that fact. Several witnesses testified as to the use of this stream, and the treatment of this stream by the borough authorities. One of them said that the water was drained into it from the streets. Another one testified that at a time about seven years ago it was cleaned out by the borough authorities, and a couple of them said, without stating any exercise of power on the part of the borough authorities, that it was a public sewer in the borough of Glen Rock. This evidence has not been in any manner controverted by any evidence on the part of the commonwealth to show that these facts do not exist in relation to this open stream. A borough, such as the borough of Glen Rock, may lawfully use an open stream of water for the purpose of a sewer. This has been decided by our Supreme Court in a number of cases. A very material question, and the most material question in this case for your consideration, so far as this defense is concerned, is whether or not this is a public sewer in the borough of Glen Rock, has been treated as such by the public authorities, and whether it is covered by the action of the board of health, as ratified by the borough authorities, as shown in the evidence, in the minutes, and in the regulations of the board of health admitted in evidence.

The general borough Act of April 3, 1851, P. L. 320, defines the powers and authority of the borough government, and the 27th clause of that act gives the authorities power to make such other regulations as may be necessary for the health and cleanliness of the borough.

By the 4th section of the Act of May 11, 1893, P. L. 44, providing for the appointment of local health boards in boroughs and other places, among other powers granted to the board of health are " to prescribe rules for the construction and maintenance of house drains, waste pipes, soil pipes and cesspools, and to make all such other regulations as they shall deem necessary for the preservation of the public health."

The defendant interposes as his defense the regulations of
the health board of the borough of Glen Rock, including sec-
tion 13, which provides as follows: " The sewerage from each
building on every street provided with a common sewer, shall
be conducted into said sewer," and the action of the town
council ratifying that act of the board of public health of the
borough of Glen Rock, " On motion of Mr. Heitshue, the sec-
retary, seconded by Mr. Stover, the rules and regulations pre-
pared by the board of health were ratified by council, and a
committee of two appointed to receive bids for printing 500, or
more, as the committee sees proper. Committee, Messrs. Heit-
shue and Stover," and some other party, Mr. Roth, I believe it
is. But that is not material. These two matters are inter-
posed and allowed by the court to be admitted, and were ad-
mitted as a defense in this case,—the action of the local board
of health, and the ratification of that action by the town coun-
cil.] [6]   Several other matters of defense were offered, but
they were overruled by the court, and are not to be considered
by the jury.

[Dr. Yost was allowed to be called and examined, and he
was allowed to testify to the use of this privy over this stream.
He testifies that he was a member of the board of health when
these regulations were made, and ratified by the council, and
that he understood the regulations of the board of health as
covering this particular stream as a public sewer, and that in
accordance with his understanding of that being a public sewer
he built and maintained this privy over this stream, and has
continued to maintain it there under that construction of the
proceedings of the board of health.] [7]

It was offered to be proved here that the creek was polluted
from other sources, but under the well established law we
refused that to be allowed in evidence.

[Therefore under this indictment the only available defense
which we can see is the action of the local board of health of
the borough of Glen Rock, and the action of councils; and the
question for your determination, and the principal question
for your determination,—because the maintenance of this privy
seems to be not denied, but it is attempted to be justified under
the law, and under the acts of the local board of health, and
the borough authorities of Glen Rock,—is for you to determine

whether or not this was a sewer, this small stream upon which the building was erected, whether it was a public sewer of the borough of Glen Rock. If it was a public sewer, by this action of the board of health, and defendant complied with it, and defendant was compelled to discharge his sewerage, including this privy, into this public sewer, he is not guilty.] [8] If it was not a public sewer, but one of the streams of the Codorus creek, and not recognized by the borough authorities as a public sewer, or was not such a public sewer as is required in this regulation of the board of health, approved by the borough council, why then the defendant is guilty. And upon this one question hinges this case.

[This offense of a public nuisance is not a matter of intention so much as many crimes are, but it is contended by the counsel for the defendant that if you believe the defendant did not intend to commit this nuisance, why then he is not guilty. The defendant has testified before you that his construction of this regulation was that it covered this stream of water, and he testifies before you that he maintained his privy upon it under that construction of the law. If he was mistaken in his construction of the law, we instruct you that that is not a defense. But we allowed him to prove this matter in his defense, as to why he allowed this privy to be over this stream of water. You will therefore inquire carefully from the evidence whether or not this is one of the public sewers of the borough of Glen Rock, and if you find that it was adopted by the borough of Glen Rock, and used by them as a sewer, then the defendant is not guilty. Or, if you have a doubt upon this question, if you are doubtful whether the evidence is sufficient to convince you of that fact, you cannot find that it was a public sewer. But you must be satisfied of this fact, like every other fact, from the evidence. If you find from the evidence that this was a public sewer, we say then that you should find that the defendant is not guilty, as he did this to prevent the penalties being enforced against him by the action of the board of health and the borough council.] [9]

If you find that it was not a public sewer, and kept up by the borough, and adopted by the borough, why then you will say whether this nuisance was created in the manner described by the commonwealth's witnesses, and whether this filth was

allowed to fall upon the bank of the stream, and fall finally into the stream; if it was, it was a corruption by the privy, and will authorize a verdict of guilty in the manner he stands indicted,—that is, on the first count.

[The second count is that he refused to obey the orders of the state board of health,—and that is the second and third count,—that the defendant refused to obey the orders of the state board of health. We have ruled in that matter that there was no action of the state board of health in this case such as would warrant the conviction of the defendant on these two counts. It may be well enough for the state board of health to have a regulation that when complaint is made to the state board, or its secretary, that the secretary shall remove and abate such nuisance, but it will not be sufficient to proceed to indictment upon such a notice, as we have ruled. Before a defendant can be convicted and punished because of a nuisance created by him, the state board of health should have a regularly organized meeting of the board, decide upon the complaint, and then the secretary give notice, and then, if the notice is not heeded, regular action of the state board of health should be taken in their organized capacity before an indictment and conviction can be had. But not, as in this case, at the instance of a corporation, and the notice served by an officer in the employ of the York Water Company. You will therefore find, in any event, the defendant not guilty on the second and third counts.] [10]

[On the first count you will inquire from all the evidence submitted to you whether or not this nuisance was committed, and whether or not this substance was discharged into the creek, or carried into the creek when the water was high. If under the evidence of the commonwealth in this case you shall conclude that it was, inasmuch as the water was used by the people of York for drinking water and domestic purposes, though you may find all this, if you find that this stream upon which the water-closet was erected was used by the borough of Glen Rock as a public sewer, and such a sewer under the evidence as the defendant was compelled to discharge therein the contents of his water-closet, why then you will find the defendant not guilty.] [11]    If it was not a sewer, and the other evidence satisfies your minds that the nuisance was committed in the

manner described by the witnesses, why then your verdict should be guilty.

[If you find the defendant guilty, you have nothing to do with costs. If you find him not guilty, you have to dispose of the cost, and you can say that the defendant shall pay all the costs, including the costs of prosecution, which will compel him to pay his own costs besides, or you may order the county of York to pay the costs of prosecution. The prosecutor in this case being a public officer, you cannot order him to pay the costs of prosecution. Mr. Weaver brought this prosecution at the instance of the district attorney, alleged to have been acting by counsel for the defendant in the interest of the York Water Company, but you cannot put any costs upon him. You must put them either upon the defendant, to pay the costs of prosecution, or upon the county of York; or, if you find from the evidence that there was a prosecutor behind all this prosecution, who instigated this prosecution, and who made these reports to the state board of health, or who instigated the prosecution by the district attorney, and you can find from the evidence who this party is, and if you find from that evidence that it was the York Water Company, you may find the York Water Company is the real prosecutor in this case, and order them to pay the costs of prosecution. But before you find that, you must satisfy yourselves from the evidence that this was the case, that the York Water Company did institute this prosecution, and was behind it, or did instigate the district attorney and court detective in the bringing of this prosecution.] [12]

The counsel for the commonwealth and for the defendant have submitted points, which they have asked the court to answer, and file their answers in writing. We now read to you the points, and our answers to the same :

. [The court is respectfully requested on the part of the commonwealth to charge the jury, and file the charge in writing, as follows :

1. What is a public nuisance is a question of law for the court. The existence of the facts, which the court may declare sufficient to constitute a public nuisance, is a question of fact for the jury. In this case there is no conflict of testimony, and it is the duty of the court to instruct the jury that if they believe the undisputed testimony, their verdict should

be that the defendant is guilty in manner and form as indicated in the first count of the indictment. *Answer :* The law stated in this point is correct. The point as a whole is not correct, and is refused.] [13]

[2. The uncontradicted evidence is that on June 28, 1898, and at the present time, the defendant was and is maintaining a privy upon his premises, the dejecta from which passes into the stream from which the water supply of the city of York is obtained. This is a violation of the 73d section of the Criminal Code of 1860, P. L. 382.

The defendant has offered no evidence which was admitted by the court as a legal defense, nor is there any denial or contradiction of the evidence produced by the commonwealth. It is therefore the duty of the jury to render a verdict of guilty under the first count of the indictment. *Answer :* The statement of facts in the first paragraph is correct. The remainder is incorrect, and the point as a whole is therefore refused.] [14]

The defendant submitted, inter alia, the following points :

[4. The burden is upon the commonwealth to show beyond a reasonable doubt that the practice of the defendant complained of, unconnected with and independent of other similar practices, injuriously affects the water of the south branch at the point from which the York Water Company takes water for its consumers, rendering it impure and unfit for drinking purposes. *Answer :* This point is affirmed.] [15]

[8. If the jury acquits the defendant, and finds that the York Water Company has instigated this prosecution, and carried it on paying the expenses, and directing its progress, directly or indirectly, it may put all the costs on the York Water Company. *Answer :* This point is affirmed.] [16]

Verdict of not guilty. The York Water Company to pay the costs. Commonwealth appealed.

*Errors assigned* were (1–5) to rulings on evidence, sufficiently set out and indicated in the statement of facts. (6–12) To portions of the general charge, reciting same. (13, 14) In answers to the commonwealth's first and second points, reciting points and answers. (15, 16) In answers to defendant's fourth and eighth points, reciting points and answers.

*Henry C. Niles*, with him *William B. Gemmill*, district attor-

ney, and *Joseph R. Strawbridge*, for appellant.—By the Act of June 3, 1885, P. L. 56, the general assembly established the state board of health to prevent the spread of contagious and infectious diseases in this commonwealth.

It was empowered to appoint a secretary who should be its executive officer and to enforce such regulations as will tend to limit the progress of epidemic diseases.

The position taken by the court below was, that, to make an order of abatement binding it was necessary for the whole board of health to consider this individual case, hear evidence and determine the question of a nuisance dangerous to health; and, that the board had no legal power by resolution to direct its executive officer to issue such orders.

The law gave the board of health power to enforce such regulations as will tend to limit the progress of epidemic diseases, and to order the abatement of nuisances. It adopted regulation two, defining a nuisance, within which definition Dr. Yost's action was admittedly embraced, and regulation one, empowering its secretary as its executive officer to order the removal of all things, which after written complaint and investigation, he finds to be obnoxious to the prohibition of regulation two. Defendant maintained a nuisance after he had been notified to abate it.

It was for the court and jury to determine whether the matter complained of was a nuisance. If it was, the defendant was bound to abate it upon notice from the secretary of the board of health.

If it was not a nuisance, the notice would not make it such, whether issued by the board after a deliberative session as a body or issued in accordance with the general regulations of the secretary.

The defendant was permitted to prove that in 1893 the borough of Glen Rock adopted by ordinance certain health regulations, section 13 of which requiring that " the sewerage from each building on every street provided with a common sewer, shall be conducted into said sewer."

Defendant was allowed to testify that he believed that under that section he was required to drain his water-closet into that stream, and three witnesses denominated the stream as a common sewer, because once the chief burgess had turned the surface water from one of the streets into it, and once the supervisor,

after a freshet, had removed lumber that clogged the channel and flooded the street.

The jury were instructed, upon this evidence, that it was for them to determine whether this stream was a public sewer of the borough of Glen Rock, and whether the action of the borough authorities required Dr. Yost to do as he did; and, if they so found, the defendant was not guilty.

The objection of the commonwealth to the admission of this evidence and the submission of it to the jury is, because (1) the ordinance did not apply to the facts of defendant's case and should have been so construed by the court, instead of being left to the jury to construe; and (2) even if the ordinance was intended to authorize or compel the defendant to commit a public nuisance it would afford no legal excuse.

No court has ever gone farther than to say that a municipality may lawfully use an open stream of water for the purposes of a sewer, provided it does not pollute the same to the injury of the public or private riparian owners.

In one case, Martin v. Philadelphia, 26 W. N. C. 120, the city proposed to turn into a culvert, through which surface water had theretofore been drained into a stream, the sewage from a number of houses. At the suit of an owner, through whose property the stream flowed, the city was enjoined by common pleas No. 1 of Philadelphia.

The further contention for such a municipal right was so preposterous that the distinguished council representing the city went no further.

That the public will derive some advantage from a nuisance or has permitted it, is no defense: 16 Am. & Eng. Ency. of Law, 937.

The principle involved in this case is of vast public importance. The rapid growth of population makes the protection of the purity of sources of water supply of the highest moment.

The dejecta of an infected person from this one source may at any time cost hundreds of lives in the city of York.

The evidence showed that a typhoid fever epidemic at York had been directly traced to a water-closet at Glen Rock situated similarly to that of Dr. Yost.

Deadly plagues at Plymouth, Philadelphia and elsewhere have been attributed to like causes.

In view of the imminent public peril, the instruction that, "If you find from the evidence that this was a public sewer we say then that you should find that the defendant is not guilty," taken in connection with all the evidence must have misled the jury.

The trial judge erroneously admitted evidence and left to the jury the question as to whether or not the action of the authorities of Glen Rock borough had converted this tributary of the Codorus into a public sewer and commanded or allowed the defendant's conduct.

The position of the commonwealth was that there was no legal evidence offered which should have been admitted or submitted to the jury of such action or authorization by the borough.

Deeper than this question is the proposition which was contended for all through the trial, and is now asserted, that even if the borough had by ordinance distinctly said, "This stream is hereby declared to be a public sewer, and Dr. Yost is commanded to maintain his privy over it," such action would be no legal excuse.

*J. S. Black*, for appellee.—The state board of health has no power or authority to order the abatement of a nuisance except such as is given it by this 6th section of the act of 1885.

The law permits the board of health to order the abatement of a nuisance under certain circumstances, but we know of no law that permits the power to be delegated by the board to its secretary, and again by the secretary to a private corporation. That power is left with the local boards and the legislature. The state board is merely clothed with a police power and enabled to enforce such regulations as may be enacted by the bodies that have the power to enact.

By the remaining assignments of error questions are raised as to whether the court erred in admitting evidence to show that the stream in question was a common sewer and had been such for fifty years, and evidence to show that the health regulations of the borough of Glen Rock required the defendant to empty his closet into it as a common sewer.

It has been held in civil cases that if the plaintiff is not entitled to recover under the evidence that was properly admitted,

exceptions to other evidence cannot avail him: O'Donnell v. Lynch, 1 W. & S. 283; Johns v. Battin, 30 Pa. 84; Lacy v. Arnett, 33 Pa. 169.

When if all the plaintiff's evidence be true he could not recover, error in answering a point is not reversible: Malson v. Fry, 1 Watts, 433.

The south branch is a private stream, and the public has no right to the use of the water, unless it has been acquired by the exercise of the power of eminent domain in accordance with the statute law. None but riparian owners may use the water: Haupt's Appeal, 125 Pa. 211; Railroad Co. v. Water Co., 182 Pa. 418.

A water company buying land along a stream has the rights of a riparian owner only, and may not sell the water: Haupt's Appeal, 125 Pa. 211.

Where the power to take exists, if it is not exercised according to law, the corporation taking becomes a trespasser: Lord v. Water Co., 135 Pa. 122.

It may not take water from a stream polluted before the taking: Brymer v. Water Co., 172 Pa. 489.

Putting filth into a private stream is not per se a nuisance. The act is not unlawful unless it results in injury to lower riparian owners. That it is a right that may be acquired even by prescription is clearly affirmed, if authority is needed upon the point, in the case of McCallum v. Germantown Water Company, 54 Pa. 40. In this case there is no pretense that the alleged act of the defendant resulted in injury to any lower riparian owner.

The commonwealth has not proved, and has not offered to prove that the waters of the south branch are polluted, impure or unfit for drinking and general domestic purposes at the point from which the water company pumps it into its reservoirs.

The undisputed evidence is that the water company, with no other rights in the stream than those of a riparian owner, is selling the water. Therefore, under the authorities above cited, the water company is a trespasser, its act in selling the water is unlawful, and, if the water it sells is impure and unfit for domestic purposes, the guilt of maintaining the consequent

nuisance is upon it, and not upon those whose sewer it has tapped.

The defendant is entitled to have the character of his act determined, not according to any abstract principle, but in the light of all the circumstances under which the act is done, its place and surroundings, the time it has been maintained, etc.: Com. v. Miller, 139 Pa. 77.

Therefore it was proper to admit evidence to show that the stream, which it is alleged defendant pollutes, is a sewer.

The undisputed evidence is that the borough enacted the ordinance in question long before the water company began selling the water, and the act of the borough in adopting this natural stream as a sewer was lawful: Munn v. Pittsburg, 40 Pa. 364.

OPINION BY ORLADY, J., July 28, 1899:

The indictment in this case contains three counts, viz : (1) For maintaining a nuisance under section 73 of the Crimes Act of March 31, 1860, P. L. 382 ; (2, 3) for refusing to obey an order of the state board of health to abate and remove a nuisance under the Act of June 3, 1885, P. L. 56. The uncontradicted evidence shows that the defendant erected and maintained a privy on the bank of a natural stream of fresh water in the borough of Glen Rock, which is situated about twelve miles above the pumping station of a water company and which supplies the city of York with water for drinking and domestic purposes. That the privy is so located that human dejecta and excrementitious matter are deposited in the bed of the stream, and by the natural flow of the water in the channel they are carried down the stream into Codorus creek. That pollution of drinking water by human fæces is likely to produce disease in those who use the water and the living germs of dysentery, typhoid fever, and other diseases in such matters may be and have been carried in running water from twenty to thirty miles. That there had been nineteen cases of typhoid fever in Glen Rock prior to this prosecution, and shortly afterwards a number of persons in the city of York were affected with the same fever.

It appears that fifty years prior to the trial there were three or four houses located on this mountain stream and from this nucleus has grown the borough of Glen Rock, though the date of its incorporation is not given.

The defense interposed to the first count was, that the stream on which the privy was located was a public and common sewer of the borough and was used as such in a lawful manner, in support of which it was shown, that where a public street crossed the stream it was covered by a bridge that had been constructed by the borough; that at other points property owners had erected their buildings on and over the stream; and that on one occasion when some flood débris had accumulated in the channel the street commissioner had removed it to prevent the backing of water upon the streets. It was also shown that the borough had enacted a health ordinance, as suggested by the state board of health, in which it was provided: " Section 13. The sewerage from each building on every street provided with a common sewer shall be conducted into said sewer," and the defendant was permitted to testify under objection that he believed he was required and compelled under that section to empty the privy deposits into the stream, and that the stream was spoken of as Manchester street sewer. The court submitted to the jury the question whether or not the stream was a public sewer of the borough of Glen Rock.

A water course does not lose any of its characteristics because houses are built on its banks, or because they increase in numbers so as to become a borough. It. was not shown that this borough had any sewage system or had exercised any supervision or control over this stream, or that any money had ever been expended in maintaining it. There cannot be a public or common sewer that has not been constructed and maintained by the municipality and that is not subject to municipal control.

The trifling emergency work done by this borough to relieve its streets of the danger of overflow was not evidence of any municipal duty to maintain it: Munn v. Pittsburg, 40 Pa. 364. A municipal corporation is nothing more than an aggregation of persons and it cannot be that liability is wholly lost in numbers; men, whether as individuals or communities, have duties to perform which lie at the foundation of responsibility: Philadelphia v. Gilmarten, 71 Pa. 140.

The term sewer, as generally used and understood in law, denotes a conduit constructed and maintained by a municipality or by its authority, by means of which cities and towns are drained of superfluous waters, filth and other refuse matter:

Bouvier's Law Dict. title "Sewers;" 6 Am. & Eng. Ency. of Law, 2.

The power to construct sewers does not impose upon the corporate authorities an obligation to exercise the power: Carr. v. Northern Liberties, 35 Pa. 324. From all that appears in this case, the abutting property owners had riparian rights in and to the stream and none other, and as such the defendant had no right to pollute the water as it passed his property. The health ordinance could not be construed to mean that the privy was a building on a street provided with a common sewer, or that this fresh water stream was a common sewer. The 9th section of the ordinance prohibits the construction or maintenance of a privy or cesspool within 150 feet of any source of water used for drinking or culinary purposes. This ordinance was enacted to carry out and more effectually to enforce the regulations of the state board of health. The wise provisions contained in these regulations were not intended for the exclusive benefit of Glen Rock borough, and it would be a strange construction indeed which would justify this defendant, or, as he claims, would compel him to do an act within the borough which in all probability would contaminate the water for those who had a right to use it below the borough. It is difficult to imagine a more injurious source of disease or a more grave offense against the public health than to place in a natural stream of fresh water in close proximity to a source of water supply human dejecta and excrement with the accompanying poisonous and disease producing germs, knowing that the natural course of the stream leads direct to a city's pumping station. It is just such disregard of law and duty that the legislature, and state board of health with its local branches all over the state, have endeavored to prevent, and to just such conduct our eminent physicians and specialists have traced the direct source of a number of loathsome and fatal epidemics. To be a public nuisance it is not necessary that it should injure every one by its malign influence, but that it be such as would naturally produce injury to all who have an interest in the water for domestic purposes.

No prescription or usage can justify the pollution of a stream by the discharge of sewage in such a manner as to be injurious to the public health. Lapse of time will not legalize a public

nuisance : Philadelphia's Appeal, 78 Pa. 33 ; Com. v. McDonald, 16 S. & R. 390 ; Philadelphia v. R. R. Co., 58 Pa. 253 ; Johnston v. Irvin, 3 S. & R. 292 ; Good v. Altoona, 162 Pa. 493.

To deposit in a natural water course, in close proximity to a source of supply from which the water is used for domestic purposes, the noisome and offensive matter described in the uncontradicted evidence in this case is a public nuisance, and it should have been so declared by the court. The use of a privy, the percolations of which contaminate the water of a well of an adjoining landowner, used for household purposes, is a nuisance per se, not justifiable on the ground of necessity : Haugh's Appeal, 102 Pa. 42. It is indictable at common law to throw the carcass of an animal in a well thereby corrupting it : State v. Buckman, 8 N. H. 203 ; Kelley v. New York, 27 N. Y. Supp. (Sup. Ct.) 164 ; Ball v. Nye, 99 Mass. 582 ; s. c. 97 Am. Dec. 57 ; Brown v. Illius, 71 Am. Dec. 49.

The state board of health was created for the better protection of life and health, and to prevent the spread of contagious and infectious diseases in the commonwealth. It is given " power to enforce such regulations as will tend to limit the progress of epidemic diseases." In places where there is no local board of health, and in cases where boards of health or health officers exist, but the sanitary laws or regulations are inoperative, it " shall have power and authority to order nuisances or the cause of any special disease or mortality to be abated and removed, and to enforce quarantine regulations, as said board shall direct."

Pursuant to the power given by the act of assembly, the state board, at a regular meeting on July 5, 1885, appointed Dr. Benjamin Lee as secretary and adopted regulations through which the aim and purpose of the legislation was to be effected. In regard to nuisances it was enacted, viz : " Whenever complaint is made in writing to the secretary of the board of the existence of a nuisance, he shall forthwith, as executive officer of the board, investigate the matter and shall determine whether the alleged nuisance is detrimental to the public health, or the cause of any special disease or mortality, and in case he shall so find, then he shall notify the owner, agent or occupier of said premises, in writing of such finding, and the executive officer shall thereupon order and direct the abatement and

removal of the same within — days; and in the event of the failure of said owner, agent or occupier of said property to abate and remove the nuisance, then the executive officer may proceed to abate and remove the same, and may employ all the force necessary to do so, and shall proceed by warrant, arrest and indictment, to convict the party failing to obey said order of abatement and removal."

The commonwealth offered to prove that a complaint was made to the state board of the existence of this privy on a tributary of Codorus creek, and that on June 28, 1898, after an examination of the premises by a properly appointed officer of the state board, the defendant was notified and required to abate and remove it within ten days, and was specially notified as follows : "In order to effectually abate and remove the nuisance herein referred to, it is hereby ordered that you remove your privy to a distance from the stream that will prevent the drainage therefrom entering its waters," which notice and order was signed by Benjamin Lee, M. D., as secretary and executive officer. This offer was overruled and the evidence excluded by the court for the reason that the board of health, as such, had never acted upon the complaint; that the notice was not given by the state board of health, but only by its secretary, the court holding that it was not such action as would sustain an indictment, under the act of 1885, for refusing to obey a notice. The legislature cannot delegate its power to make a law ; but it can delegate a power to determine some fact or state of things upon which the law makes its own action depend. To deny this would stop the wheels of government: Locke's Appeal, 72 Pa. 491. The state board is charged with the preservation of the public health, and is necessarily invested with large powers in the abatement of nuisances. The statutory requisites of the gentlemen who comprise this board, and who serve the public without moneyed compensation, show the legislative intent in securing the highest proficiency and interest in the preservation of the health and safety of the people of the state.

The power and authority of the state board of health to order nuisances or the cause of special disease or mortality to be abated and removed is not limited to the action taken at the convened meetings of that body. The board is only an instrumentality of the commonwealth through which the purposes of

the act are to be effected. The grant of a general power carries with it, by necessary implication, a grant of all the special powers which are necessary to effectuate the grant of the general powers. The act of assembly which created the state board of health designated the secretary as its executive officer. As such officer, with his duties defined by the by-laws and regulations, he is intrusted with the execution of the law, and of superintending its enforcement, and when he is conducting the business of the board, within the scope of his authority, he speaks for, acts for, and virtually is the board itself. The statute and the by-laws of the board, gave him ample authority to give the notice to this defendant and to "proceed by warrant, arrest and indictment to convict the party failing to obey said order of abatement and removal." Whether the defendant was justified in refusing to obey the notice served upon him by the executive officer of the state board depends upon the fact as to whether or not the privy as located was a nuisance, not only in the judgment of the executive officer of the state board, but in its being legally ascertained in court.

The commonwealth cannot be expected to prove to an absolute certainty that disease producing germs are carried a given distance in a water course as it would be an exaction impossible of performance to require a chemical and microscopic analysis of the whole body of a stream of water. Such a fact is not capable of being demonstrated to a mathematical certainty and such a degree of proof is not demanded by the law. Whether a state of facts amounts to a nuisance is in many cases dependent on the opinion of witnesses, and a reasonable and probable exactness based on experience and scientific investigation is the most that can be expected in such cases.

The reasonable doubt as to guilt, which is the defendant's property, must arise out of the evidence, which prevents a jury from coming to a satisfactory conclusion, a doubt which causes a juror's mind to pause and hesitate. But such a doubt must fairly arise out of the evidence, and not be merely fancied or conjured up. It must be an honest doubt, such a difficulty as strikes a conscientious mind and clouds the judgment. If the mind is fairly satisfied of a fact on the evidence as much so as would induce a man of reasonable firmness and judgment to take the fact as true and to act upon it in a matter of import-

ance to himself, it would be sufficient to rest a verdict upon: Com. v. Cleary, 135 Pa. 64.

It would be impossible to have the state board meet on the ground of an alleged nuisance to consider every complaint before deciding upon its abatement or removal. To require this would nullify and invalidate the whole system. A board of health or a municipality has ample authority to declare to be a nuisance whatever is per se a nuisance at common law, and to abate it. The determination of a board of health that a nuisance exists is not final and conclusive, and when the cause is brought to trial, if the uncontradicted evidence shows it to be a nuisance per se, it should be so declared by the court as in the case of a pig sty, a fat rendering or bone boiling establishment and the like in the populous part of a city, and if not, the case should go to a jury for its ascertainment under proper instructions. The state board in a great state like Pennsylvania can only act by its agents and appointees, who speak for it by right of their appointment. The location and character of the alleged nuisance can be best ascertained by individual inspection, rather than incur the delay and expense incident to the meeting of a number of persons comprising a board. Under the facts in this case the state board is the final authority in deciding whether, in places where boards of health or health officers exist, the sanitary laws or regulations are inoperative, so as to order the abatement and removal of a nuisance. The defendant testified that he prepared the ordinance enacted by the borough, that he was a member of the local board of health and was the health officer of the borough at the time. His own interpretation of the regulations of the state board and of the ordinance cannot be the measure of his culpability and the state board should not be bound by the act of any such representative. Regard for the public welfare is the highest law, and it is not at all material that the complaint in the case was made by the York Water Company, but it should rather be considered in the light of a public benefactor instead of being found to be a prosecutor to have the costs imposed on it. The prosecution was grave in its character and was instituted at the instance of the state board of health. It was well worthy of an investigation for the good of the public. The water company was, no doubt, instrumental in furnishing the state board of health the evidence necessary

to bring the case to trial, but this did not constitute it the prosecutor. It was not trifling, unwarranted or malicious in its character, and it was fully justified by the facts of the case.

The assignments of error are sustained. The judgment of the court below is reversed and the verdict set aside. The record is remitted to the court below and it is ordered that the case be again tried.