## Schneider et ux. v. Sweeney et al.

*Otto W. Woltersdorf,* for plaintiffs.
*Herman Blumenthal,* for defendants.

CRUMLISH, J., August 5, 1948.—Plaintiffs are the owners of premises 500 and 502 West Diamond Street, Philadelphia. Defendant Kane is the purchaser at sheriff sale on an unpaid tax lien of premises 504 West Diamond Street; the Sweeneys were predecessors in title to Kane. Plaintiffs complain that the Sweeneys allowed the soil pipe in their property to be filled with refuse, debris, foreign matters, and objects, causing the same to clog and overflow with resultant damage to property stored in the cellar of their property; that plaintiffs had been required to open the sewer and to remedy the condition at their own expense; that on January 20, 1948, the Department of Public Works of the City of Philadelphia advised them that Diamond Street was to be repaved from Front Street to Broad Street and that all sewer and other connections requiring renewals must be made immediately and that no such connection can be made for the next five years; that on being notified to remedy the condition of which complaint is made, defendants have failed to do so. Plaintiffs pray that a mandatory injunction be granted against defendants requiring them to abate the nuisance.

Separate answers were filed by the Sweeneys and Kane. These answers are almost identical. In substance, they deny that anything was done by them causing plaintiffs' property to be filled with "waste, refuse, debris, foreign matters and objects or any other nuisance of whatsoever kind, character, and nature . . ."; that they did not cause plaintiffs to open the sewer to remedy any condition caused by them; that any overflow was by reason of matters beyond their control; that their soil and drain pipes are in good condition; and, finally, that "plaintiffs desire to attempt a vacation of an easement which has been in existence for over 37 years" which defendants do not desire to give up.

*Findings of Fact*

1. Plaintiffs are the owners of premises 500-502 West Diamond Street, Philadelphia.

2. Plaintiffs conduct a taproom and lunchroom on said premises and in connection therewith store food, vegetables, and liquors in the cellar of said premises.

3. The Bureau of Highways and Street Cleaning, Department of Public Works, by writing dated January 20, 1948, notified plaintiffs:

"You are hereby notified that the Bureau of Highways, acting under the authority of an ordinance of Council, and by the direction of the Director of Public Works, will proceed to pave-repave the cartway on

Diamond St.  Front to Broad Street

in front of the property indicated above.

"You are, therefore, directed to procure immediately all necessary permits and within twenty (20) days of the date of service of this notice to have made all gas, water, sewer, electrical, telephone or other underground connections or repairs to or renewals of all existing connections that may be required within the next Five (5) years."

4. Bernard Kane purchased premises 504 West Diamond Street, Philadelphia, at sheriff sale on January 5, 1948.

5. Kane's predecessors in the title of premises 504 West Diamond Street were defendants, Eugene Aloysius Sweeney, Margaret Sweeney, Mary Sweeney, and John Sweeney.

6. Defendants Kane, Margaret Sweeney, and John Sweeney do not reside at 504 West Diamond Street; the premises are occupied by defendant Eugene Aloysius Sweeney, his wife, two sons, two grandchildren, and his daughter, Mary Sweeney, who is also a defendant, as tenants of defendant Kane.

7. The cesspool in the back yard of 504 West Diamond Street, drains into a sewer pipe which runs through the foundation wall of 502 and 504 West Diamond Street, is connected with a trap or open drain in the basement of 502 West Diamond Street, and empties into the sewer pipe in Diamond Street.

8. Filthy waste and solid objects from the cesspool located in the back yard of 504 West Diamond Street have interfered with the free drainage of said cesspool and have caused the cellar of plaintiffs' premises to become flooded, damaging the food, vegetables, and other articles stored therein and giving forth noxious and offensive odors.

9. These overflows and consequential results have been recurrent since 1945.

10. Defendants Sweeney had notice of the nuisance existing on the premises 504 West Diamond Street by reason of their occupancy thereof.

11. Defendant Kane had notice of the nuisance existing on the premises 504 West Diamond Street by reason of a communication to him, dated February 3, 1948, and forwarded by plaintiffs' counsel, and defendant Kane has had adequate opportunity to use reasonable diligence to abate the nuisance.

12. Said nuisance has not been abated.

13. Plaintiffs have sought to remedy this condition by rerouting drainage from their property into Fifth Street.

14. Despite plaintiffs' efforts and expenditures of money in order to correct the situation, the flooding of plaintiffs' cellar and consequential injuries have continued, necessitating plaintiffs' repeatedly hiring a plumber to relieve the situation.

15. Diamond Street between Front Street and Broad Street is presently in process of being repaved and no permits for the purpose of opening it will be

granted for a period of five years after date of completion.

16. Defendants have had notice of the City of Philadelphia's official notice regarding the paving of Diamond Street.

## Discussion

The inference to be drawn from the testimony is that the drainage system in premises 504 West Diamond Street has been neglected and allowed to fall into a state of deterioration and dilapidation and that there is no present intention to correct the condition. The result is that offensive waste matters and solids clog the drainage system which causes a backing up or flooding of plaintiffs' cellar. This flooding injures and damages whatever it comes in contact with in plaintiffs' cellar and gives forth offensive odors.

The position of defendants, gathered from the requests filed in the matter, is that they enjoy an easement which cannot be interfered with by injunction. It is not necessary to decide the nature of defendants' right; suffice it to say that their right, to adopt the words of Judge Hare, used in Jacobs v. Worrall, 15 L. I. 139 (1858), and adopted in Haugh's Appeal, 102 Pa., 42, 44 (1883), "is a right only so long as it is used without material injury to the property of others; when its fetid contents begin to leak over upon joining lands it becomes a nuisance and is actionable as such."

"A nuisance has been defined as 'that which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him' ": Tuckachinsky v. Lehigh and Wilkes-Barre Coal Co., 199 Pa. 515, 518 (1901). But specifically, this complaint falls within the line of cases commencing with Jacobs v. Worrall, supra, and followed in Haugh's Appeal, supra. See also Commonwealth v. Yost, 11 Pa. Superior Ct. 323, 341 (1899); Benscoter v. Huntingdon Valley Camp Meeting Associ-

ation, 10 Kulp, 355 (1900); Kubacki v. Rapaport, 6 Berks 71 (1913). See also Pottstown Gas Co. v. Murphy, 39 Pa. 257 (1861).

It is quite clear from the testimony that the condition which defendants allowed to exist is a private nuisance per se and should be abated.

Defendant Kane takes the further position that, being out of possession of the premises, he is not liable and cannot be reached by injunction. In Whiteley et al. v. Mortgage Service Co. et al., 337 Pa. 475 (1940), a case of first impression, it was held, as a general proposition, that where an owner of leased premises, exercising no control over the acts of a tenant, has neither authorized nor directly nor indirectly participated in the creation or continuance of a nuisance, he cannot be made answerable for the objectionable conduct of those occupying the premises. But this rule is not applicable here. Justice Barnes, speaking for the Supreme Court, was careful to point out, at page 478, that the Whiteley case was not "a case where the owner leases premises upon which a nuisance already exists." Nor was that a cesspool case. In Fow v. Roberts, 108 Pa. 489, 492 (1885), holding that an owner was answerable for a cesspool so constructed as to result in a nuisance, Justice Paxson said:

"The defendant having demised the premises in question to a tenant with a cesspool so situated thereon that its use must necessarily result in a nuisance to the plaintiff, we are of opinion that she is liable to the plaintiff. It was urged, however, that it was only for the manner of its use that the well became a nuisance. We fail to see the force of this reasoning. The cesspool was used for the very purpose for which it was constructed, and the tenant had the right to use it. We cannot measure the extent to which a cesspool may be lawfully used. Its lawful use in this case resulted in a nuisance to the plaintiff; the defendant demised

the premises with the cesspool so located that it would naturally produce such a result and for this result we must hold her to be liable."

In C. M. Briegel v. City of Philadelphia, 135 Pa. 451, 459 (1890), holding the City of Philadelphia liable, as the owner of a public school house property, to an adjoining owner for injuries arising from a nuisance, i. e., a defectively constructed privy well on the public school grounds, it was held:

"The ownership of property entails certain burdens, one of which is the obligation of care that it shall not injure others in their property or persons, by unlawful use or neglect. This obligation rests, without regard to personal disabilities, on all owners alike, infants, femes covert, and others, by virtue of their ownership, and municipal corporations are not exempt."

Moreover, defendant Kane cannot sufficiently contend that he is not liable for repairs. The lease was not put in evidence; and, in the absence of an express covenant on the part of the lessee to make all repairs, the implied covenant on the lessee's part does not require him to make permanent repairs: Long v. Fitzimmons, 1 W. & S. 530 (1841). In Scheerer v. Dickson, 7 Phila. 472, 26 L. I. 93, 3 Brewster 276 (1869), the burden of keeping the privy of a demised house in a habitable condition was placed upon the landlord. Finally, defendant Kane had reason to know or should have known of the condition of the cesspool; this is clearly established by the evidence. Under date of February 3, 1948, plaintiffs' counsel notified defendant Kane by letter of the existence of the nuisance and also of the fact that the city would not permit the "digging up of" Diamond Street for a period of five years, etc.

In the light of the decisions and also from a realistic approach to the question, the owner of a property on which there is a cesspool which amounts to a private

nuisance per se who has had notice and opportunity to use reasonable diligence in correcting the situation, is not immune from an injunction even though he is out of possession and has leased the premises to tenants who are in possession, because, under such circumstances, the owner is charged with notice and has the duty of maintaining the cesspool in such a sanitary condition that an adjoining owner will suffer no injury.

## Conclusions of Law

1. The drainage operation of the cesspool in premises 504 West Diamond Street constitutes a nuisance and is enjoinable.

2. Plaintiffs are entitled to protection from the overflow of the drainage from said cesspool.

3. Defendants are chargeable with knowledge of the existence of said cesspool.

## Decree Nisi

And now August 5, 1948, this cause having come on for hearing on bill, answer, and proof, and upon consideration thereof, it is ordered and decreed

1. That defendants, Eugene Aloysius Sweeney and Mary Sweeney, be restrained from making use of the cesspool in the yard of 504 West Diamond Street, Philadelphia, until the nuisance is abated;

2. That defendant, Bernard Kane, abate, forthwith, at his own expense and in such manner as will comply with the rules and regulations of the proper supervisory authorities of the City of Philadelphia, the nuisance resulting from the drainage of the cesspool in the yard of 504 West Diamond Street, Philadelphia.

3. The costs of these proceedings be paid by defendants.

The prothonotary will enter this decree nisi and give notice to the parties, or their counsel of record, of the entry of this decree, and if no exceptions are filed

within 10 days thereafter, the decree nisi shall be entered as the final decree, by the prothonotary, as of course.